UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------------------ x

JUSTIN FREEMAN                                 :
                                               :
                          Plaintiff,           :
                                               :
            v.                                 :            3:25-CV-00926 (SFR)
                                               :
PAMELA BONDI, et al.                           :
                                               :
                          Defendants.          :
------------------------------------------------------------------ x

**MEMORANDUM & ORDER**

Plaintiff Justin Freeman brings this action against United States Attorney General Pamela Bondi ("USAG"),[1] all thirteen Connecticut State's Attorneys, and the Commissioner of Connecticut's Department of Emergency Services and Public Protection (the "State Defendants") for alleged violations of his right to bear arms under the United States Constitution. For the reasons that follow, I dismiss in part and stay in part Freeman's Amended Complaint pending resolution of Freeman's administrative remedies.

I.    **BACKGROUND**

      A.    **Factual Background**

Facts are taken from the Amended Complaint, except where noted. Freeman is a citizen of the United States and Connecticut. Am. Compl. ¶ 8, ECF No. 21-2. On November 28, 2018, Freeman pleaded guilty to a one-count information charging him with violating 26 U.S.C. § 7206(1). *Id.* ¶ 65. The stipulation of offense conduct stated that Freeman signed false income

---

[1] Todd Blanche is the Acting Attorney General of the United States and thus is substituted as Defendant in place of Pamela Bondi pursuant to Federal Rule of Civil Procedure 25(d).

1

tax returns in 2010, 2011, and 2012 that significantly underreported income that Freeman made from his law practice. *Id.* ¶ 66.

Freeman was a practicing attorney before his conviction. *Id.* ¶ 5. In 2022, following his release from prison, Freeman was readmitted to the Connecticut bar and in 2025, was reinstated to the bar for the District of Connecticut. *Id.* ¶¶ 77-78, 81. Other than the tax offense, Freeman has no prior or subsequent criminal record. *See id.* ¶ 82. Freeman has no history of violence, no mental health or substance abuse issues, and is not subject to any restraining orders. *Id.* ¶¶ 82-84. Nonetheless, pursuant to federal and state law, Freeman is prohibited from purchasing or possessing firearms. *Id.* ¶ 5.

The Complaint names as a defendant the Attorney General of the United States. *Id.* ¶ 9. The Attorney General is responsible for the criminal enforcement of 18 U.S.C. § 922(g) which, *inter alia*, bars people previously convicted of felonies from possessing any firearm or ammunition. *Id.* ¶¶ 9, 24.

The other Defendants ("State Defendants") include: Sharmese Walcott, Michael Gailor, Christian Watson, Matthew Gedansky, Maureen Platt, David Shannon, Margaret Kelley, Joseph Corradino, David Applegate, John Doyle, Jr., Paul Narducci, Paul Ferencek,[2] and Anne Mahoney, all of whom are Connecticut State's Attorneys; and Ronnell Higgins, the Commissioner of Connecticut's Department of Emergency Services and Public Protection. *Id.* ¶¶ 10-22.

---

[2] Defendant Ferencek is listed in the case caption and the prayer for relief as a defendant, but is not described in the claims themselves. I nonetheless construe Freeman as bringing identical claims against Ferencek as against the other Connecticut State's Attorneys.

The State's Attorneys are responsible for prosecuting individuals who violate Connecticut statutes, including statutes which prohibit individuals convicted of felonies, *inter alia*, from possessing or selling firearms, ammunition, or electronic defense weapons. *Id.* ¶¶ 10-22; 50-64. Defendant Higgins, in his capacity overseeing the Connecticut State Police, is responsible for, *inter alia*, enforcing state laws regarding possession, sale, or transfer of firearms by individuals convicted of felonies. *Id.* ¶ 22.

According to the Amended Complaint, Freeman "intends to apply for a Connecticut pistol permit to lawfully purchase, possess, and carry firearms and ammunition." *Id.* ¶ 96. Additionally, in September 2025, after the filing of this suit, the Department of Justice invited Freeman to apply for a restoration of his firearms rights pursuant to 18 U.S.C. § 925(c) by submitting an application to the Office of the Pardon Attorney. Pl.'s USAG Opp'n 11, ECF No. 29; USAG Mem. 9, ECF No. 24-1.

### B.    Procedural History

Freeman filed the initial Complaint in this action on June 9, 2025. ECF No. 1. On October 1, 2025, the USAG moved for a stay due to a lapse in funding, which the Court granted on October 2, 2025. ECF Nos. 19-20.[3] On January 14, 2026, the Court lifted the stay. ECF No. 25.

On December 1, 2025, Freeman filed an Amended Complaint.[4] ECF No. 21. On January 9, 2026, the State Defendants filed their Motion to Dismiss and the USAG filed a

---

[3] This case was initially assigned to the Honorable Omar A. Williams.

[4] Freeman filed a Motion to Amend/Correct his Complaint and provided the Amended Complaint as an attachment. *See* ECF No. 21, 21-2. As the court noted in a subsequent order, "Plaintiff was free to amend the Complaint 'as a matter of course' without the court's leave" but nonetheless granted the motion "for the avoidance of doubt." ECF No. 25. The USAG and the State Defendants

Motion to Dismiss or Stay. ECF Nos. 23-24; *see* State Defs.' Mem., ECF No. 23-1; USAG Mem., ECF No. 24-1. Freeman filed his Memoranda in Opposition to the Motions to Dismiss on February 23, 2026. Pl.'s USAG Opp'n, ECF No. 29; Pl.'s State Opp'n, ECF No. 30. USAG filed a Reply on March 16, 2026, and the State Defendants filed their Reply on March 17, 2026. USAG Reply, ECF No. 34; State Defs.' Reply, ECF No. 35-1. The case was transferred to me on April 24, 2026. ECF No. 38.

## II.    **LEGAL STANDARD**

The standard governing motions to dismiss under Rule 12(b)(6) is well established. A complaint may not survive unless it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Kim v. Kimm*, 884 F.3d 98, 103 (2d Cir. 2018); *Lapaglia v. Transamerica Cas. Ins. Co.*, 155 F. Supp. 3d 153, 155-56 (D. Conn. 2016). Although this "plausibility" requirement is "not akin to a probability requirement," it "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. The court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). However, the court is not bound to accept "conclusory allegations or legal conclusions masquerading as factual conclusions." *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008).

---

expressly addressed their motions to dismiss against the Amended Complaint. *See* State Defs.' Mem. 2 n.1; USAG Mem. 2 n.1.

### III.    DISCUSSION

Freeman's Amended Complaint alleges five claims against the Defendants in their official capacities: two against the State Defendants and three against the USAG. Freeman seeks declaratory judgments that various state and federal statutes, which prevent him from acquiring or possessing firearms and ammunition, are unconstitutional as applied to Freeman. He also seeks permanent injunctions enjoining the State Defendants and the USAG from enforcing those statutes against him.

In Count One, Freeman asserts that the State Defendants' enforcement of Conn. Gen. Stat. §§ 29-28(c)(2)(A)[5], 29-33(a) & (c), 29-36f(b)(2)(A), 29-37a(d), 29-37p(b)(2)(A), 53a-217, and 53a-217c, which in various ways prohibit people convicted of felonies from owning, possessing, or transferring firearms, are unconstitutional under the Second Amendment as applied to Freeman. Am. Compl. ¶¶ 103-10. In Count Three, Freeman claims that the State Defendants' enforcement of these same statutes is unconstitutional under the Fourteenth Amendment's Equal Protection Clause as applied to Freeman. *Id.* ¶¶ 119-28.

In Count Two, Freeman alleges that the USAG's enforcement of 18 U.S.C. § 922(g)(1), the federal statute prohibiting individuals convicted of felonies from shipping or transporting in interstate commerce, possessing in or affecting interstate commerce, or receiving any firearm or ammunition shipped or transported in interstate commerce, is unconstitutional under the Second Amendment as applied to Freeman. *Id.* ¶¶ 111-18. In Count Four, Freeman asserts

---

[5] In his brief, Freeman cites to "Conn. Gen. Stat. § 29-28(b)(1)(B)," alleging that the statute "requires Defendant Higgins and all local police chiefs who vet temporary state pistol permits to deny those permits to anyone who has a felony conviction." Am. Compl. ¶ 56. I infer that Freeman intended to cite § 29-28(c)(2)(A), which holds that local permitting authorities may not issue a temporary permit to carry a pistol or revolver if the applicant "has been convicted of (A) a felony." Conn. Gen. Stat. § 29-28(c)(2)(A).

that the USAG's enforcement of that statute is unconstitutional under the Fourteenth Amendment's Equal Protection Clause as applied to Freeman. *Id.* ¶¶ 129-37.

Finally, in Count Five, Freeman claims that 18 U.S.C. § 922(g) is an unconstitutional overextension of Congress' power to regulate interstate commerce under the Commerce Clause. *Id.* ¶¶ 138-44.

I will address Counts One and Two together. I will then individually address the remaining three claims.

### A.    Counts One and Two: Second Amendment Claims

All parties agree that Freeman's claims in Counts One and Two are squarely foreclosed by the Second Circuit's decision in *Zherka v. Bondi*, 140 F.4th 68, 77 (2d Cir. 2025), a case decided the same day that Freeman's initial Complaint was filed. State Defs.' Mem. 4 (quoting *Zherka*, 140 F.4th at 96) ("[In *Zherka*,] the Second Circuit 'join[ed] the majority of our sister circuits that have considered similar arguments, and [] reject[ed the] contention that the prohibition on possession of firearms by convicted felons violates the Second Amendment as applied to "nonviolent" felons.'"); USAG Mem. 7 ("The plaintiff's arguments here concerning the constitutionality of § 922(g)(1) are not materially different from those made in *Zherka*, if they are different at all."); Pl.'s USAG Opp'n 4 (noting that "Freeman does not dispute that [*Zherka*] requires the Court to dismiss his Second Amendment claims (Counts 1 and 2)" and preserving arguments for appeal); Pl.'s State Opp'n 3-4 (same).

I agree with the parties that *Zherka* squarely forecloses Freeman's claims under the Second Amendment. In *Zherka*, the plaintiff had been convicted of a nonviolent federal felony, namely conspiracy to make a false statement to a bank and to sign and file a false federal income tax return in violation of 18 U.S.C. § 371. *Zherka*, 140 F.4th at 70. After serving his

6

sentence, he challenged 18 U.S.C. § 922(g), arguing that it was unconstitutional as applied to an individual convicted of only a nonviolent felony. *Id.* After his claims were rejected in the district court, Zherka sought review at the Second Circuit, arguing that the Circuit should "vacate the district court's decision and remand the case for further consideration" under the newly announced standard in *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 17 (2022), and that the government had failed to meet its burden under *Bruen* of "demonstrating that there is a history and tradition of regulating firearms in this country in a manner that is analogous" to § 922(g). *Id.* at 70-72. The Second Circuit analyzed § 922(g) and rejected Zherka's challenge, holding that the prohibition on possession of firearms by individuals convicted of felonies does not violate the Second Amendment as applied to individuals convicted of nonviolent felonies. *Id.* at 96.

Freeman's claims are indistinguishable from those at issue in *Zherka*. Like Zherka, Freeman was convicted of a nonviolent tax-related felony and is thus barred from possession or firearms and ammunition under federal and state law. That Freeman also challenges state laws prohibiting the possession of firearms does not change the analysis, and Freeman does not argue to the contrary. And *Zherka* remains the law of the Second Circuit. "[A] published panel decision is binding on future panels unless and until it is overruled by [Second Circuit] *en banc* or by the Supreme Court." *Heim v. Daniel*, 81 F.4th 212, 226 (2d Cir. 2023) (internal quotation marks omitted) (quoting *Deem v. DiMella-Deem*, 941 F.3d 618, 623 (2d Cir. 2019)). *Zherka* has not been overruled by the Second Circuit *en banc* or by the Supreme Court, and it remains binding precedent. Freeman does not argue otherwise and instead preserves a number of arguments for appeal. As Freeman's Second Amendment claims are squarely governed by binding Circuit precedent, I am bound to follow that precedent.

I therefore grant both motions to dismiss as to Counts One and Two of the Amended Complaint.

### B.      Count Three: Equal Protection Challenge to Application of State Laws

In Count Three, Freeman claims that the state laws disqualifying people convicted of felonies from firearm ownership, possession, and transfer violate the Equal Protection Clause of the Fourteenth Amendment as applied to Freeman.

In his Amended Complaint, Freeman alleges that "Conn. Gen. Stat. §§ 29-28[(c)(2)(A)], 29-33(a) & (c), 29-36f(b)(2)(A), 29 37a(d), 29-37p(b)(2)(A), 53a-217, and 53a-217c all operate to disqualify a person convicted of a felony for intentionally making a false statement with respect to their tax returns from acquiring, possessing, or carrying firearms for self-defense." Am. Compl. ¶ 124. He notes that Conn. Gen. Stat. § 12-383, which outlaws false statements on a person's transfer or succession tax returns,[6] and § 53a-157b, which broadly prohibits making "intentionally false statement[s] to a public official" with intent to mislead that official, are only classified as misdemeanors. *Id.* ¶ 125-26. Freeman therefore argues that "Connecticut's firearms disqualifiers place[] an unequal burden on individuals like Freeman who have been convicted of federal crimes classified as felonies that are intrinsically the same as Connecticut crimes that are classified as misdemeanors." *Id.* ¶ 127.

The State Defendants respond that the Equal Protection claim is subsumed by the Second Amendment claim and I should reject Freeman's claim entirely on that ground. State Defs.' Mem. 5-6. Alternatively, the State Defendants argue that Connecticut law in fact treats

---

[6] The State Defendants note that the "succession tax" was repealed in 2004. State Defs.' Reply 2 n.1, ECF No. 35-1.

state income tax evaders as felons identically to federal law because a different statute, Conn. Gen. Stat. § 12-737(b), makes false reporting on state *income* tax returns a felony. *Id.* at 6-8. State Defendants argue that Freeman is therefore making a selective enforcement claim and conclude that such a case is entirely speculative as Freeman has not provided any comparators who committed similar acts but were charged with different offenses. *Id.* at 8-10.

Freeman responds that, although Connecticut makes submission of a false income tax return a felony, it "classifies false statements on other tax forms" and "false statements to government officials as misdemeanors." Pl.'s State Opp'n 11. He argues that "[t]hese crimes are intrinsically the same: lying to the government to obtain an advantage," and that *Skinner v. Oklahoma*, 316 U.S. 535 (1942) prohibits the unequal imposition of collateral consequences for offenses which are intrinsically the same. *Id.* at 10-11. The State Defendants counter that "courts in this Circuit have routinely declined to find that criminals who have committed different crimes are similarly situated for the purposes of Equal Protection," and that "underreport[ing] over $1 million in income" to defraud the United States of income taxes is not intrinsically the same as "making a false written statement to any public servant or filing a false affidavit regarding Connecticut's estate tax." State Defs.' Reply 2-3.

To state an equal protection claim where a suspect classification is at issue, "a plaintiff must demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination." *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005). The plaintiff must show that the "selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Bizzarro v. Miranda*, 394 F.3d 82, 86 (2d Cir. 2005) (alterations omitted). When a suspect classification is not at issue,

the Equal Protection Clause still requires that individuals not be treated differently from other similarly situated individuals. *Fortress Bible Church v. Feiner*, 694 F.3d 208, 222 (2d Cir. 2012).

Freeman does not argue that he was treated differently on the basis of any impermissible consideration, and "convicted felons are not a suspect classification." *Barletta v. Rilling*, 973 F. Supp. 2d 132, 136 (D. Conn. 2013) (citing *Romero v. Pataki*, 241 Fed. App'x 764, 766 (2d Cir. 2007)). Thus, Freeman may bring a "class of one" equal protection claim if he "alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).[7]

In the Second Circuit, a class-of-one plaintiff "must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves." *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006). The similarity between the plaintiff and the comparators provides "an inference that the plaintiff was intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy that an improper purpose—whether personal or otherwise—is all but certain." *Witt v. Village of Mamaroneck*, No. 12-CV-8778 (ER), 2015 WL 1427206, at *5 (S.D.N.Y. Mar. 27, 2015) (quoting *Neilson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir. 2005)), *aff'd*, 639 F. App'x 44 (2d Cir. 2016).

---

[7] Freeman expressly disclaims a view of this count as a selective-enforcement claim. *See* Pl.'s State Opp'n 9 (stating that "[t]he State Defendants try to reduce Freeman's Equal Protection [claim] to a beef about prosecutorial discretion" but this "effort disregards Supreme Court precedent").

10

Freeman argues that his offense is "intrinsically the same" as other kinds of fraud offenses which are classified as misdemeanors, and thus the imposition of collateral consequences, namely the prohibition on firearms applied under state law, is arbitrary in violation of the Equal Protection Clause. Pl.'s State Opp'n 10-11.

In *Skinner*, the Supreme Court struck down a forced sterilization law as unconstitutional because it made entirely arbitrary distinctions between categories of offenders that the Court believed were "intrinsically the same." *Skinner*, 316 U.S. at 539. By way of example, the Court noted that, under state law, both grand larceny and embezzlement were felonies, and both involved the theft of money. *Id.* at 538-39. But embezzlement was arbitrarily excluded from the sterilization law; thus, an individual who embezzled $20 from his employer, and a stranger who stole the same amount, would both be guilty of a felony—but, because the law arbitrarily drew distinctions between these two offenses, only the latter would be subject to sterilization. *Id.* at 538-39 (citations omitted) ("A clerk who appropriates over $20 from his employer's till and a stranger who steals the same amount are thus both guilty of felonies. If the latter repeats his act and is convicted three times, he may be sterilized. But the clerk is not subject to the pains and penalties of the Act no matter how large his embezzlements nor how frequent his convictions. . . . Thus the nature of the two crimes is intrinsically the same and they are punishable in the same manner."). Indeed, "[i]n terms of fines and imprisonment the crimes of larceny and embezzlement rate the same under the Oklahoma code. Only when it comes to sterilization are the pains and penalties of the law different." *Id.* at 542.

The Court was careful to distinguish impermissible arbitrary distinctions from the general power of states to "mark and set apart the classes and types of problems according to

11

the needs and as dictated or suggested by experience." *Id.* at 540. The Court specifically held

that

> We must remember that the machinery of government would not work if it were not allowed a little play in its joints. Only recently we reaffirmed the view that the equal protection clause does not prevent the legisl[a]ture from recognizing degrees of evil by our ruling in *Tigner v. Texas* that the Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same. Thus, if we had here only a question as to a State's classification of crimes, such as embezzlement or larceny, no substantial federal question would be raised. For a State is not constrained in the exercise of its police power to ignore experience which marks a class of offenders or a family of offenses for special treatment.

*Id.* (internal quotation marks and citations omitted). The state in *Skinner* did not violate the

Equal Protection Clause by choosing to categorize embezzlement and larceny as felonies rather

than as misdemeanors, nor would the state have violated the Constitution by classifying one

as a felony and the other a misdemeanor.

Freeman argues that the lesser tax and fraud offenses "are intrinsically the same" as

income tax fraud because income tax fraud, estate taxes, and making false statements on

government forms are all "lying to the government to obtain an advantage, including a

financial advantage." Pl.'s State Opp'n 11. But *Skinner* does not stand for the proposition that

states must classify similar offenses similarly. Nothing in *Skinner* prohibits states from

classifying certain tax crimes as felonies while classifying others as misdemeanors. And

*Skinner* does not require states to identically classify multiple offenses that might apply in a

given situation—here, one law criminalizing false statements on income tax returns as a felony

and another criminalizing false statements to government officials generally as a misdemeanor.

On the contrary, *Skinner* expressly allowed for the possibility that legislatures may categorize

some similar offenses differently than others, so long as crimes which are similar and are

classified identically are treated the same, at least with regard to triggering a consequence as severe as sterilization. *Skinner*, 316 U.S. at 540.

Here, federal and state law both classify false statements on income tax returns as felonies. *See* 26 U.S.C. § 7206(a); Conn. Gen. Stat. § 12-737(b). The other state fraud laws Freeman identifies, Conn. Gen. Stat. §§ 12-383 and 53a-157b, are not "intrinsically the same" as laws criminalizing false statements on income tax returns because they have different elements and because the state classifies them as misdemeanors. Moreover, Freeman has not identified any other individuals who committed identical offenses but were convicted of misdemeanors, as would be required for a "class-of-one" claim. *See Clubside,* 468 F.3d at 159.

I therefore grant the State Defendants' motion to dismiss Count Three.

### C.    Count Four: Equal Protection Challenge to Application of Federal Laws

Freeman also brings an equal protection claim against the United States, arguing that the current process for restoring gun rights to individuals convicted of felonies is being selectively enforced in violation of the Fourteenth Amendment. Am. Compl. ¶¶ 132-34. He argues that he is "similarly situated to at least two people . . . on the list of individuals" whose right to bear arms has been restored by the Attorney General, *id.* ¶ 135, but that "Defendant Bondi is intentionally enforcing, and would enforce, 18 U.S.C. § 922(g)(1) against Freeman to prevent him from exercising his Second Amendment" rights, *id.* ¶ 136. He also argues that the Attorney General's process under § 925(c) is arbitrary, unclear, and favors the rich and powerful. Pl.'s USAG Opp'n 11-12.

The USAG responds that I should dismiss this claim pursuant to the prudential ripeness doctrine because Freeman has not actually applied to the Attorney General for relief under § 925(c) and thus cannot allege he is the victim of selective enforcement while refusing to

13

participate in a process that could restore his rights. USAG Mem. 10. The USAG argues that,

unless and until Freeman attempts to use the existing pathways for the restoration of his Second

Amendment rights, I should avoid ruling on constitutional questions related to those pathways.

*Id.* at 11-12.

> According to the Amended Complaint:
>
> For most of the time that the authority to remove federal firearms disabilities
> has been granted to the Attorney General, Attorneys General have delegated the
> authority to review applications for relief from these disabilities to the Bureau
> of Alcohol, Tobacco, and Firearms (ATF). . . . Since 1992, Congress has
> prohibited the ATF from investigating or otherwise reviewing and approving
> individual citizens' applications for relief from these disabilities by way of an
> annual appropriations rider that prohibits the ATF from spending any of its
> appropriations to review applications for relief. . . . On March 20, 2025,
> Defendant Bondi caused an interim final rule to be published in the Federal
> Register withdrawing the delegation of authority to the ATF to review and
> approve or deny 18 U.S.C. § 925(c) applications, effective immediately.

Am. Compl. ¶¶ 36-37, 40.[8] Thus, the "existing pathway" referenced by the USAG is the

recently restored § 925(c) process which allows an applicant to apply for direct approval by

the Attorney General.

---

[8] Under 18 U.S.C. § 925(c),

> A person who is prohibited from possessing, shipping, transporting, or receiving
> firearms or ammunition may make application to the Attorney General for relief
> from the disabilities imposed by Federal laws with respect to the acquisition,
> receipt, transfer, shipment, transportation, or possession of firearms, and the
> Attorney General may grant such relief if it is established to his satisfaction that
> the circumstances regarding the disability, and the applicant's record and
> reputation, are such that the applicant will not be likely to act in a manner
> dangerous to public safety and that the granting of the relief would not be
> contrary to the public interest. Any person whose application for relief from
> disabilities is denied by the Attorney General may file a petition with the United
> States district court for the district in which he resides for a judicial review of
> such denial.

18 U.S.C. § 925(c).

"The doctrine of ripeness is designed to ensure that courts do not resolve disputes prior to when they are ready for a judicial resolution." *Beatty v. Gilman,* 718 F. Supp. 3d 166, 181 (D. Conn. 2024) (citing *Revitalizing Auto Cmtys. Env't Response Tr. v. Nat'l Grid USA*, 10 F.4th 87, 99-100 (2d Cir. 2021)). Courts generally recognize two related but distinct varieties of ripeness: constitutional ripeness and prudential ripeness. *Id.* "Prudential ripeness presupposes that a plaintiff has suffered a constitutional injury in fact but nonetheless allows a court to determine that the case will be better decided later." *Id.* at 182 (internal quotation marks and citations omitted) (quoting *Revitalizing Auto Cmtys.*, 10 F.4th at 100).

The Supreme Court has admonished lower courts to be cautious in abstaining under prudential ripeness, viewing that doctrine as only a narrow exception to the strong principle of mandatory exercise of jurisdiction, and the Second Circuit has not directly addressed whether prudential ripeness doctrine remains good law. *Paro Mgmt. Co. v. Willis of New Jersey, Inc.*, No. 25-872-CV, 2025 WL 3085953, at *2 (2d Cir. Nov. 5, 2025). "In general, the more the matter to be placed before the court involves a pure issue of law, unaffected by factual considerations, the less the concern that judicial review might" be premature. *Lab. Council for Latin Am. Advancement v. U.S. Env't Prot. Agency*, 12 F.4th 234, 253 (2d Cir. 2021).

For purposes of prudential ripeness, a court must ask two questions. First, it asks "whether the claim is fit for judicial resolution." *Revitalizing Auto Cmtys.*, 10 F.4th at 100. Second, it asks "whether and to what extent the parties will endure hardship if decision is withheld." *Id.*

Even assuming without deciding that Freeman would endure hardship if I withhold my decision, I find that this case is not fit for judicial resolution. The primary concern of the "fitness" prong of the prudential ripeness test is whether the record before the court is

15

insufficiently developed and would benefit from further factual development, or whether the issue is sufficiently developed and "the court would be in no better position to adjudicate the issues in the future than it is now." *Simmonds v. I.N.S.*, 326 F.3d 351, 359 (2d Cir. 2003); *compare Whitman v. Am. Trucking Ass'ns,* 531 U.S. 457, 479 (2001) (internal quotation marks and citations omitted) (concluding that rendering a decision on the legality of challenged regulations would not "inappropriately interfere with further administrative action, since the EPA has concluded its consideration of the implementation issue") *with Socialist Lab. Party v. Gilligan*, 406 U.S. 583, 587 (1972) (dismissing on ripeness grounds where "the record . . . now before this Court, is extraordinarily skimpy in the sort of proved or admitted facts that would enable us to adjudicate this claim"). The Second Circuit has additionally described the fitness analysis as "concerned with whether the issues sought to be adjudicated are contingent on future events or may never occur." *Simmonds,* 326 F.3d at 359 (quoting *Isaacs v. Bowen,* 865 F.2d 468, 478 (2d Cir. 1989)).

The USAG argues that, because the Attorney General invited Freeman to apply for relief pursuant to § 925(c) on September 5, 2025 (after the start of this litigation), "he has access to [the § 925(c)] process . . . [but] has, though, refused to avail himself of it, and he cannot now fairly claim to be the subject of unconstitutionally disparate treatment when he has not taken the steps that are available to him." USAG. Mem. 12. The USAG urges me not to entertain Freeman's constitutional challenge until the available § 925(c) process is attempted and concluded. *Id.*

Freeman's claim here is premised on the allegedly selective enforcement of federal statute by the Attorney General. To prevail on an Equal Protection claim based on selective enforcement, "a plaintiff must prove that '(1) the person, compared with others similarly

16

situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations.'" *Chinese Am. Citizens All. Greater New York v. N.Y.C. Dep't of Educ.*, 802 F. Supp. 3d 483, 499 (S.D.N.Y. 2025) (quoting *Hu v. City of New York*, 927 F.3d 81, 91 (2d Cir. 2019)).

I agree with the USAG that this case is not fit for judicial resolution because it is not clear, at this point, whether Freeman in fact has been "selectively treated" compared to others similar situated. Freeman alleges that the current § 925(c) process, which requires direct application to the Attorney General, is "vague" and "whimsical." Am. Compl. 19. He notes that there are no instructions on how the process works or publicly listed criteria explaining how the Attorney General will make decisions, and argues the entire process is dependent on the "diligence and mercy of federal officials and their subjective assessment of the public interest"—in other words, that there are "no speedy methods to seek relief from federal firearms disabilities or clear standard under which to seek them." *Id.* ¶¶ 92-94.

The USAG's briefing does not provide any details about the § 925(c) process. Nonetheless, Congress provided authority for the Attorney General to remove federal firearms disabilities through § 925(c). Freeman was specifically invited to apply for that relief but has so far declined to do so for reasons he has not elucidated on the record. Instead, Freeman asks this Court to declare unconstitutional a process he has not yet attempted to access before any unfavorable outcome has actually occurred. The result of the § 925(c) process as it relates to Freeman is itself a critical factual component of this case; without that result, I cannot compare Freeman's process and outcome to the processes and outcomes of those similarly situated. Additional factual development here would put this Court in a better position to adjudicate Freeman's equal protection claim.

17

Freeman responds that "[t]he Court can resolve Freeman's Second Amendment claims based on the facts and law presented to it, and Defendant Bondi's determination whether to restore Freeman's firearms rights will make no difference in the outcome." Pl.'s USAG Opp'n 11. But the USAG's decision could make a difference in the outcome. I cannot determine whether Freeman was "selectively treated" until he is, in fact, *treated* according to the restoration process. Because Freeman has not sought relief through the statutorily-available process that was used by the "similarly situated" individuals cited by Freeman, the factual record is inadequate to analyze a selective enforcement claim and would benefit from additional development.

In this narrow circumstance, where the government has expressly offered and Freeman has refused to attempt a solution, established by statute, to remedy his injury, I decline to decide this case at this point. I deny the USAG's motion to the extent it seeks to dismiss Count Four but grant it to the extent that it seeks a stay of proceedings while Freeman pursues the § 925(c) process.

### D.      Count Five: Commerce Clause Claim

Finally, Freeman argues that 18 U.S.C. § 922(g)(1) is an unconstitutional overreach of Congress' power to regulate interstate commerce under the Commerce Clause, Am. Compl. ¶¶ 142-44, and that *NFIB v. Sebelius*, 567 U.S. 519 (2012) undermines existing Second Circuit precedent holding § 922(g) constitutional under the Commerce Clause, Pl.'s USAG Opp'n 7-9. The USAG responds that Freeman's argument is foreclosed by existing Second Circuit precedent, and that *NFIB* does not alter that analysis. USAG Reply 1-4. Freeman also "recognizes that Second Circuit precedent compels the dismissal of his Second Amendment

18

and Commerce Clause claims." Pl.'s USAG Opp'n 1. I agree with the parties that binding Second Circuit precedent forecloses Freeman's claims.

The Second Circuit held in *United States v. Sorrentino*, 72 F.3d 294 (2d Cir. 1995), that § 922(g) was a constitutional exercise of Congress's power under the Commerce Clause because it "requires a legitimate nexus with interstate commerce" and to "obtain a conviction under Section 922(g), the government must show that the weapon at issue was ship[ped] or transport[ed] in interstate or foreign commerce or was possess[ed] in or affect[ed] commerce." *Sorrentino*, 72 F.3d at 296 (alterations in original) (internal quotation marks and citations omitted), *overruled on other grounds by, United States v. Abad*, 514 F.3d 271 (2d Cir. 2008). Even after *NFIB*, the Second Circuit has affirmed its analysis under § 922(g). *United States v. Bogle*, 522 Fed. App'x 15, 22 (2d Cir. 2013) (rejecting argument that § 922(g) is not authorized by the Commerce Clause). The Second Circuit's holding that § 922(g) is a constitutional exercise of the Commerce Clause power has not been overturned by the Supreme Court or the Second Circuit and it controls the outcome of Freeman's claim. I am therefore bound to apply it here.

I therefore grant the motion to dismiss Count Five.

## IV.    **CONCLUSION**

For the foregoing reasons I grant the State Defendants' and the USAG's Motions to Dismiss as to Counts One, Two, Three, and Five. As to Count Four, I grant the USAG's Motion in the Alternative to stay this litigation pending resolution of the § 925(c) process.

The parties shall submit a joint status report on or before February 4, 2027 updating the Court on the § 925(c) process.

19

**SO ORDERED.**

New Haven, Connecticut
August 5, 2026

/s/*Sarah F. Russell*
SARAH F. RUSSELL
United States District Judge